## Commonwealth v. Johnson

*Karl E. Richards*, district attorney, for Commonwealth.

*Earl V. Compton*, for defendant.

HARGEST, P. J., November 18, 1935.—This case was tried by the court, the defendant having waived a jury trial pursuant to the Act of June 11, 1935, P. L. 319.

The evidence shows that the defendant went before Anna E. Woods, a notary public in Philadelphia, who filled out for him, upon a form apparently prepared by the Department of Revenue for the purpose, an application for a learner's permit, under The Vehicle Code of May 1, 1929, P. L. 905, 75 PS §166. This application, accompanied by the check of Anna E. Woods, drawn to the Department of Revenue in the sum of $3, found its way to the department at Harrisburg, but there is no evidence as to how it was sent or whether the applicant selected Anna E. Woods as his agent to transmit it. Two witnesses for the Commonwealth, members of the State Highway Patrol, testified that the application was made to the department in Harrisburg. The check of Anna E. Woods is dated July 15, 1935, the same day on which the jurat upon the application is dated, and there appears on the application a stamp in blue ink "JUL 16 P.M."; and a stamp in red ink "Approved for issue July 16, 1935, Title No. 13." The evidence shows that there had been sent to Charles Johnson, 106 South Third Street, Philadelphia, a notice from the Secretary of Revenue, dated May 7, 1934, that his privilege to operate motor vehicles had been withdrawn effective upon that date for a period of one year because of "larceny in connection with the theft of a motor vehicle, certification from the Clerk of the Court of Philadelphia County"; that on

August 24, 1934, the defendant made an application for a learner's permit, but that his check was returned and he was advised that "no consideration may be given to the restoration of a privilege before the expiration of one year from the date of his notice of May 7." He was also cautioned concerning misstatements on future applications, "as misstatements of that kind are punishable by a penalty in the form of a fine or imprisonment or both."

The application before us contains question 4, as follows: "4. If you have never been issued a license, has your right to apply for such license or your privilege to operate in this or any other state ever been suspended or revoked?" The answer to this question is "No" written in ink. Question 5 is as follows: "5. If you have been licensed, has your license ever been suspended or revoked?" After this question there is a check mark which was clearly made over an erasure. The answer to every other question is printed by a typewriter. All the information required is given in type. Both the defendant, and a witness whom he produced, testified that the notary public, who filed in this application with a typewriter, did not propound question no. 4 to the applicant. The evidence also shows that when the application was made by the defendant it was left with the notary public.

The defendant contends: First, that this court has no jurisdiction because the offense, if any, was committed in Philadelphia County and not in Dauphin County; second, that there is no evidence as to how the application found its way into the Department of Revenue in Dauphin County; third, that the application shows upon its face that the alleged false answer was inserted by making an alteration in the instrument, and there is no evidence that the defendant knew or assented to such an alteration.

1. Section 606 of The Vehicle Code of May 1, 1929, P. L. 905, 75 PS §166, in paragraphs (a) and (b), provides that the Department of Revenue shall issue a

learner's permit upon an application, containing the information required by the section, sworn to before a notary public or other officer, and section 620 of the said act, as amended by the Act of June 22, 1931, P. L. 751, 75 PS §231, in paragraph (j), provides that it shall be unlawful for any person "to . . . knowingly make a false statement, or knowingly conceal a material fact, or otherwise commit a fraud in any application."

1. It is contended that if any false statement was made it was made in Philadelphia, and therefore no offense has been committed in Dauphin County.

At common law, all offenses were inquired into and tried in the county where they were committed, and the visne or neighborhood from which the sheriff was required to return a panel of jurors was interpreted as meaning a county: Commonwealth v. Collins, 268 Pa. 295, 300. And, as a general proposition, it takes a legislative enactment to extend jurisdiction beyond the confines of the county where an offense originated. Under the common law of England, a murderer could only be tried in the county in which the murderous assault took place, but that jurisdiction was later enlarged to include the county in which the injured person died. So, under the Act of March 31, 1860, P. L. 427, sec. 43, 19 PS §521, in this Commonwealth, treason committed out of the jurisdiction of the State is triable in the county where the offender is apprehended, or into which he is first brought. Murder is now triable, as it was extended in England, in the county where the person was feloniously stricken and also where death occurs, pursuant to section 46 of the Act of March 31, 1860, P. L. 427, 19 PS §521. By section 49 of the Act of March 31, 1860, P. L. 427, 19 PS §525, an offense committed during a journey from place to place is triable in any county through which the conveyance carrying the defendant passed in the course of the journey. By section 48 of the same act, 19 PS §524, an offense committed within 500 feet of a county boundary is triable as if committed within the

borders of the county. The criminal law has thus been extended to obviate the difficulty of proof in order that a guilty person may not escape, but the fundamental principle back of these provisions is that the peace of the Commonwealth is disturbed or broken, or likely to be disturbed or broken, in these counties to which jurisdiction is extended.

An offense may be triable in more than one jurisdiction: Commonwealth v. Sexton et al., 107 Pa. Superior Ct. 69, 71. It is certainly triable where the offense is completed: Garbracht v. The Commonwealth, 96 Pa. 449. The fact that part of the offense was committed in one county does not take away jurisdiction from the county where the offense was finally completed: Commonwealth v. Winegrad, 92 January sessions, 1934, decided in this court April 29, 1935.

What then is the situation in the instant case? The statute requires that an application for a learner's permit shall be made to the Department of Revenue. The department is at Harrisburg, Dauphin County. It is an offense to "knowingly make a false statement, or knowingly conceal a material fact, or otherwise commit a fraud in any application." If the defendant in this case had physically written a false statement in the form prescribed for applications, and after having done so had put the form in his pocket, would it have been an application? It did not become an application until he applied to have the thing done for which the form was prepared and executed. It is a trite saying that a criminal statute must be strictly construed, and we construe this statute strictly when we say that every paper in which a false statement is made is not an application. Our interpretation of the statute is that a paper containing a false statement does not become an application until it is used to move the department to grant the thing applied for. The application must be made to the department, and therefore, so far as anything appears in this case, it could not be made anywhere else than where the depart-

ment is located, namely, in this county. It must be borne in mind the charge in this case is not perjury but it is making a false statement contained in an application made to the department. The defendant swore to the paper in Philadelphia County. If he were charged with perjury another question would arise, but the charge is making an application with a false statement in it. Suppose, for instance, there were no affidavit required and he had executed the paper in Philadelphia County and carried it in person to the department in Dauphin County, could it for a moment contend that because he physically filled out the paper in Philadelphia the offense was committed there? We definitely hold that using the application in this county, with a false statement in it, even though physically filled up and sworn to in Philadelphia County, gives this court jurisdiction.

2, 3. A more serious question, so far as the guilt of the defendant is concerned, is raised by reasons two and three. We held, in Commonwealth v. Spohn, 38 Dauph. 99, that there should be some evidence in a case charging a defendant with drawing, uttering and delivering a check with intent to defraud, where the check was executed in Montgomery County and payable to a bank in Montgomery County, as to how the check was delivered and uttered in this county. In the instant case such evidence may be at hand. The check was drawn by the notary, before whom an affidavit was taken, and in the nature of things she would not be paying the defendant's fee for a learner's permit. A reasonable inference would be that the defendant paid her the money and made her his agent for the transmission of the application. However, the other reason is much more serious. This application shows on its face that the answer alleged to be false was not written, as all the other answers are, in typewriting. The answer is written in pen, and the uncontradicted evidence—not only by the defendant, whose credibility might be impeached because of the previous conviction in a criminal case, but also by another wit-

ness whose credibility is in no way impeached—is that question no. 4 was never propounded to the defendant, and it certainly is a reasonable inference that before the notary public transmitted this paper she discovered the omission and inserted the answer in pen.

Such a situation as is now presented before us would invalidate a note: Hartley & Co. v. Corboy, 150 Pa. 23, 28; Cornog v. Wilson, 231 Pa. 281, 283. If the court could not enter judgment upon a note with such a situation unexplained, certainly we should not enter a judgment of guilt against a defendant under similar circumstances. We cannot escape the conviction that a reasonable doubt as to the guilt of the defendant in making false answers arises in this case, and for that reason the defendant must be adjudged not guilty.

And now, November 18, 1935, the defendant is acquitted and discharged, at the cost of the County of Dauphin.